2011-01311
FILED
August 23, 2012
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0004398074

UNITED STATE BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| In re<br><br>Debra Lynn Twisselman,<br><br>    Debtor.<br>_____<br>Randell Parker, Chapter 7 Trustee<br><br>    Plaintiff,<br>v.<br><br>Debra Lynn Twisselman,<br><br>    Defendant.<br>_____ | Case No. 11-19294-B-7<br><br><br><br><br><br>Adversary Proc. No. 11-01311 |

**MEMORANDUM DECISION FOLLOWING TRIAL ON OBJECTION
TO DISCHARGE AND EQUITABLE SURCHARGE OF EXEMPTIONS**

This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Lisa Holder, Esq., of the law firm of Klein, DeNatale, Goldner, Cooper, Rosenlieb & Kimball, LLP appeared on behalf of plaintiff, Randell Parker, Chapter 7 trustee.

Debra Lynn Twisselman appeared in pro per.

The adversary proceeding was tried before the court without a jury and taken under submission on August 2, 2012. This memorandum decision contains the court's findings of fact and conclusions of law required by FED. R. CIV. P.52(a), made applicable to this adversary proceeding by FED. R. BANKR. P. 7052.

RECEIVED
August 20, 2012
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0004398074

The bankruptcy court has jurisdiction pursuant to 28 U.S.C. § 1334, 11 U.S.C. § 707, and General Orders 182 and 330 of the U.S. District Court for the Eastern District of California. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A).[1]

The first issue decided in this adversary proceeding is whether Debra Lynn Twisselman ("Twisselman"), who signed and verified blank bankruptcy papers knowing that they would be subsequently completed by her attorney, is entitled to her discharge. For the reasons set forth below, Twisselman's discharge is denied pursuant to 11 U.S.C. § 727(a)(4)(A).

The second issue decided is whether Twisselman, who hid and misrepresented the value of bank accounts and spent the funds post-petition, is entitled to exempt other property she continues to control. For the reasons set forth below, Twisselman's otherwise allowable exemptions are surcharged pursuant to *Latman v. Burdette,* 366 F.3d 774 (9th Cir.2004).

**BACKGROUND AND FINDINGS OF FACT.**

Twisselman filed her voluntary petition under chapter 7 on August 17, 2011. Parker was appointed to serve as the chapter 7 trustee. Along with the petition, Twisselman filed Schedule D – Creditors Holding Secured Claims, Schedule F – Creditors Holding Unsecured Nonpriority Claims, the Master Address List, Statement of Social Security Numbers, and Disclosure of Attorney Compensation. On August 18, 2011, the court issued a Notice of Incomplete filing and Notice of Intent to Dismiss Case if Documents are not Timely Filed. Twisselman timely filed most remaining documents on August 31, 2011.[2] All documents filed by Twisselman reflect

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the FED. R. BANKR. P., Rules 1001-9036, as enacted and promulgated after October 17, 2005, the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23.

[2] The documents filed on August 31, 2011, included her Summary of Schedules; Statistical Summary; Schedule A - Real Property; Schedule B - Personal Property; Schedule C - Exempt Property; Schedule E - Unsecured Priority Creditors; Schedule G - Executory Contracts; Schedule H - Codebtors; Schedule I - Current Income; Schedule J - Current Expenditures; Statement of Financial Affairs; and Means Test - Form 22A. Debtor also filed an Amended Voluntary Petition that same day.

electronic signatures (/s/) of Twisselman and her attorney.[3]

Twisselman is an individual and her debts appear to be primarily consumer debts.

The schedules report real property assets worth $95,000.00, and personal property assets worth $486,485.00. Those assets include Twisselman's residence valued at $95,000, two bank accounts with Charles Schwab valued at $25.00 each, two automobiles valued collectively at $12,000.00, a Charles Schwab IRA valued at $24,000.00, and cash surrender value in a Thrivent Financial for Lutherans life insurance policy valued at $6,000.00. Twisselman also scheduled $347,500.00 in personal property assets that are bitterly contested in her state court marital dissolution case.

The schedules list unsecured nonpriority claims against the estate totaling $23,119.29. Twisselman has no priority claims. Her secured obligations, which consist of two mortgages against her residence owed to Charles Schwab, total $192,569.25. Twisselman did not file a statement of intention. Charles Schwab filed two motions for relief from the automatic stay to continue foreclosure against the residence, which were granted on October 14, 2011, and November 9, 2011.

Twisselman exempted assets under California Code of Civil Procedure Sections 704.010 et seq. Twisselman exempted $75,000.00 of value in her over-encumbered house, and $3,525.00 in both vehicles combined. Twisselman also exempted the cash surrender value of her Thrivent Financial for Lutherans life insurance policy under C.C.P. Section 704.100, and her Charles Schwab IRA under C.C.P. Section 704.115(a)(1) & (2), (b).

Parker objects to Twisselman's discharge on several grounds under Bankruptcy Code section 727(a) based on various acts and events alleged in connection with her bankruptcy proceeding and misrepresentations in her schedules. Parker asserts, *inter alia*, that Twisselman failed to disclose a checking account at Chase bank, which held a balance of $20,186.19 on the petition date; that her non-exempt Charles Schwab checking account held $1,235.12 on the petition date rather than $25.00; that her non-exempt Charles Schwab savings account held

---

[3] Debtor and her counsel utilized BANKR. E.D. CAL. R. 9004-1(c)(1)(B) through (D), and apparently 9004-1 (d).

$1,795.23 on the petition date rather than $25.00; that her 2007 Chevrolet Avalanche's value was approximately $16,000.00 on the petition date rather than $10,000.00; and that her 2005 Honda Civic's value was approximately $6,000.00 on the petition date rather than $2,000.00.

Parker argues that the concealment of the Chase account, and the inaccurate values placed on the Charles Schwab accounts and the vehicles are grounds to deny Twisselman's discharge under Bankruptcy Code section 727(a)(4)(A)— false oath or account.

At trial, Parker's opening statement described the undisclosed funds in the bank accounts and the undervalued vehicles. Parker stated that the evidence would show that Twisselman made a false oath or account when Twisselman hid the Chase account, and scheduled the other assets with inaccurate values. Parker stated that the funds in the bank accounts are dissipated, and that the court should allow Parker to surcharge Twisselman's otherwise exempt assets to compensate the estate for the non-exempt assets that Twisselman hid or undervalued.

Twisselman's opening remarks described the circumstances under which she filed her case, and her interactions with her attorney leading up to the filing. Twisselman said that on the day before the foreclosure sale regarding her residence, her attorney faxed blank bankruptcy documents to her, which she signed and returned to him counting on his office to fill in the correct information. Twisselman confirmed that she did not read her bankruptcy pepers before she signed them – there was nothing to read because they were blank. On the petition date, Twisselman filed a Voluntary Petition, Exhibit D – Individual Debtor's Statement of Compliance with Credit Counseling Requirement, Schedule D, Schedule F, Master Address List, and Statement of Social Security Numbers. In response to Parker's allegation that Twisselman failed to disclose the Chase checking account, Twisselman explained that she hid that money in her mother's bank account so that Twisselman's husband would not obtain access to it.

**ISSUES PRESENTED.**

The Trustee filed a timely adversary proceeding to deny Twisselman's discharge under 11 U.S.C. §§ 727(a)(4)(D), and/or (A) and/ or (5), and for equitable surcharge of exempt

property.[4] Parker contends that Twisselman should not receive a discharge and that he should be permitted to surcharge Twisselman's exempt assets to compensate the estate for the assets that she dissipated post-petition.

Based on Twisselman's offer of proof in her opening remarks, the court determined that it would enter judgment against Twisselman denying her discharge. The remaining issue was whether Twisselman's conduct arose to "exceptional circumstances" so that surcharging Twisselman's exemptions in her otherwise exempt property is appropriate. The court determined that Parker may surcharge Twisselman's exemptions.

**DISCUSSION.**

**Objection to Discharge.** Bankruptcy Code section 727(a) limits a debtor's right to receive a discharge on specific grounds, including the knowing and fraudulent filing of a false oath in connection with a bankruptcy case:

> "(a) The court shall grant Debtor a discharge, unless—
>
> ...
>
> (4) Debtor knowingly and fraudulently, in or in connection with the case—
>
> (A) made a false oath or account.

Discharge under Bankruptcy Code section 727 is a privilege, not a right, and may only be granted to the honest debtor. *Dubrowsky v. Perlbinder (In re Dubrowsky)* 244 B.R. 560, 572 (E.D.N.Y.2000) (citing *In re Sicari*, 187 B.R. 861, 880 (Bankr.S.D.N.Y.1994)), (citing *In re McManus*, 112 B.R. 773, 775 (Bankr.E.D.Va.1990) and *In re Tabibian*, 289 F.2d 793, 794 (2nd Cir.1961)).

Twisselman's discharge can be denied under Bankruptcy Code section 727(a)(4)(A) only if she knowingly and fraudulently made a false oath relating to a material fact. The burden of proof rests on the trustee. *Boroff v. Tully (In re Tully)* 818 F.2d 106, 110 (1st Cir.1987). The standard of proof in a dischargeability action is the preponderance of evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

---

[4] A claim for relief entitled Denial of Exemption Under 11 U.S.C. § 522(g) was dismissed without prejudice by the Trustee.

> It has long been recognized that, ... the very purpose of certain sections of the law, like 11 U.S.C. § 727(a)(4)(A), is to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs. The statutes are designed to insure that complete, truthful, and reliable information is put forward at the outset of the proceedings, so that decisions can be made by the parties in interest based on fact rather than fiction .... '[t]he successful functioning of the bankruptcy act hinges both upon the bankrupt's veracity and his willingness to make a full disclosure.' *Tully*, 818 F.2d at 110.

The party objecting to the discharge based on erroneous bankruptcy schedules must show that the information was omitted for the specific purpose of perpetrating a fraud and not simply because Debtor was careless or failed to fully understand his or her attorney's instructions. *In re Dubrowsky*, 244 B.R. at 571–572 (*citing In re Kelly*, 135 B.R. 459, 461 (Bankr.S.D.N.Y.1992)). However, under Bankruptcy Code section 727(a)(4)(A), "... a reckless indifference to the truth is sufficient to sustain an action for fraud." *Dubrowsky* at 572 (*citing In re Kaiser*, 722 F.2d 1574, 1583 (2d Cir.1983))."The statutory requirement of 'knowingly' mandates only that the defendant's act be voluntary and intentional—it does not require that a defendant know that the conduct violates the law. The defendant's reckless indifference to the truth is sufficient to sustain a cause of action under Section 727(a)(4)(A)." *Castillo v. Casado (In re Casado)* 187 B.R. 446, 450 (Bankr.E.D.N.Y.1995).

<u>Signing Forms is an "Oath" Within the Meaning of Section 727(a)(4)(A).</u> FED. R. BANKR. P. 1008 requires that "[a]ll bankruptcy petitions, lists, schedules, statements and amendments thereto shall be verified or contain an unsworn declaration as provided in 28 U.S.C. § 1746." The use of an unsworn declaration to verify a debtor's petition, schedules, and statement of affairs must be subscribed by the declarant as true under penalty of perjury and is recognized by law to have "like force and effect" as a sworn verification, oath or affidavit (28 U.S.C. § 1746).

The Bankruptcy Code requires a debtor to file documents containing specific information regarding a debtor's assets and its financial affairs. Specifically, Bankruptcy Code section 521 states in pertinent part:

"Debtor shall—

(1) file a list of creditors, and unless the court orders otherwise, a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of Debtor's financial affairs...."

FED. R. BANKR. P. 9009 prescribes the official forms to be used for bankruptcy pleadings: "The Official Forms prescribed by the Judicial Conference of the United States shall be observed and used with alterations as may be appropriate. . . . The forms shall be construed to be consistent with these rules and the Code."

Several of the Official Forms, specifically including the petition, schedules, and verification of master address list at issue here, utilize an unsworn declaration under penalty of perjury for verification in compliance with FED. R. BANKR. P. 1008.

Under *In re Leija* (Bankr. E.D. Cal. 2001) 270 B.R. 497, 502-03, the court found that the term "oath" in Bankruptcy Code section 727(a)(4)(A) necessarily includes the unsworn declarations prescribed in the Official Forms. To hold otherwise would virtually nullify section 727(a)(4)(A) and would render FED. R. BANKR. P. 1008 meaningless. *Id.*

Accordingly, Twisselman's execution of the petition, schedules, and verification of master address list forms constituted the making of an "oath" in connection with her case for purposes of section 727(a)(4)(A).

<u>Signing Blank Official Forms is a Material Representation</u>. Because bankruptcy pleadings must be verified by law, the verification itself is a material representation of fact—that the debtor had read the pleading and that the information was true and correct to the best of the debtor's information and belief. *In re Leija* (Bankr. E.D. Cal. 2001) 270 B.R. 497, 503. Therefore, the representations made by Twisselman were material.

<u>Signing Blank Official Forms Constitutes a Knowing and Fraudulent "False Oath" Under Section 727(a)(4)(A)</u>. Courts have generally recognized that failure to read the schedules is not a defense to an action under Bankruptcy Code section 727(a)(4)(A). *Equibank v. Ward (In re Ward)*, 92 B.R. 644, 647 (Bankr.W.D.Pa.1988). Nor is the "advice of counsel" a defense when the erroneous information should have been evident to debtor. *Tully*, 818 F.2d at 111 (citing *In*

7

*re Mascolo* 505 F.2d 274, 277 n. 4 (1st Cir.1974)).

The court does not need to look to the truthfulness of the information in Twisselman's documents and does not need to consider her efforts to explain the disposition of her assets. The verifications themselves were *materially false oaths*. The actual content of the documents was added later by the attorney. The truthfulness and accuracy of that information, and the reason for any errors, are irrelevant to the "false oath" issue when a debtor verifies the documents in blank. *In re Leija* (Bankr. E.D. Cal. 2001) 270 B.R. 497, 503. For these very reasons, the shoddy practice of verifying *blank* pleadings to be filed in a judicial proceeding is not condoned by this court. *Id.* at 504.

**Surcharge against Exempt Property**. Parker seeks to surcharge or impair Twisselman's exemptions in her IRA and the cash surrender value of her life insurance policy, and argues that the value of the property impermissibly retained by Twisselman should be charged against Twisselman's exemptions.

In *Latman v. Burdette*, 366 F.3d 774 (9th Cir.2004), the Ninth Circuit held that the surcharge of a debtor's exempt assets may be an appropriate remedy "when reasonably necessary both to protect the integrity of the bankruptcy process and to ensure that a debtor exempts an amount no greater than what is permitted by the exemption scheme of the Bankruptcy Code." *Id.* at 786. As the *Latman* court noted, *id.* at 785–86, a number of bankruptcy courts have reached the same conclusion. *See, e.g., In re Mazon,* 368 B.R. 906, 910 (Bankr.M.D.Fla.2007) (noting that the remedy of surcharge "prevent[s] what would otherwise be a fraud on the court and on creditors caused by a debtor's failure to schedule and turn over estate assets"); *In re Karl,* 313 B.R. 827, 831 (Bankr.W.D.Mo.2004) (explaining that the surcharge remedy preserves "the spirit of the Bankruptcy Code and the creditors' reasonable expectations in the event of liquidation").

In *Latman*, the debtors concealed $7,000 in proceeds from the sale of a vehicle and a boat. When the trustee became aware of these assets and their sale, he requested an accounting of the sale proceeds. The trustee moved to surcharge the debtors' exemptions when they refused to provide him with an accounting and then turn over the sale proceeds. *Latman,* 366 F.3d at 778–79.

Here, Twisselman failed to schedule over $20,000.00 that she hid in her mother's bank account, and depleted the fund so that on the date of trial the account held $162.62. Twisselman also undervalued the funds in her Charles Schwab savings and checking accounts, which were not exempt. Allowing Twisselman to keep the full value of her exempt assets, when she has kept or converted assets belonging to the estate, gives Twisselman an undeserved benefit at the expense of the estate and the creditors.

The Trustee is permitted to surcharge Twisselman's exemptions to make the estate whole for the funds hidden in the Chase bank account ($20,186.19 on the petition date), and the funds in the Charles Schwab accounts ($1,235.12 in checking and $1,795.23 in savings on the petition date), which Twisselman hid or undervalued, and dissipated post-petition.

Twisselman is also required to surrender her 2007 Chevrolet Avalanche vehicle, which was undervalued and only partially exempt. Twisselman is denied an exemption in the Avalanche, and her $3,525.00 vehicle exemption shall be deemed to apply to her Honda Civic.

**Judgment on the opening statement.** The court determined to enter judgment against Twisselman at the conclusion of the opening statements. Twisselman's offer of proof admitted that she had returned blank signature pages to her attorney relying on him to fill in the documents appropriately.

Under FED. R. CIV. P.52(c), made applicable to this adversary proceeding by FED. R. BANKR. P. 7052(c), a court may grant a motion made by either party, or may grant judgment *sua sponte* at any time during a bench trial, so long as the party against whom judgment is to be rendered has been "fully heard" with respect to an issue essential to that party's case. As a result, the court need not wait until that party rests its case-in-chief to enter judgment . *See N.Y. Susquehanna & W. Ry. Corp. v. Jackson,* 500 F.3d 238, 246 n. 6 (3d Cir.2007) ("[T]he Federal Rules of Civil Procedure ... allow judgment after partial findings against a party that has been fully heard on the relevant issue."); *Feliciano v. Rullan,* 378 F.3d 42, 59 (1st Cir.2004) ("When a party has finished presenting evidence [as to a particular issue] and that evidence is deemed by the trier insufficient to sustain the party's position, the court need not waste time, but, rather, may call a halt to the proceedings and enter judgment accordingly."); *Granite State Ins. Co. v. Smart*

*Modular Techs., Inc.,* 76 F.3d 1023, 1031 (9th Cir.1996) ("[T]he rule 'authorizes the court to enter judgment at any time that it can appropriately make a dispositive finding of fact on the evidence.' " (quoting Fed.R.Civ.P. 52(c) advisory committee's note)).

The requirement that a party must first be "fully heard" does not, however, "amount to a right to introduce every shred of evidence that a party wishes, without regard to the probative value of that evidence." *First Va. Banks, Inc. v. BP Exploration & Oil, Inc.,* 206 F.3d 404, 407 (4th Cir.2000). In this respect, it is within the discretion of the trial court to enter a judgment on partial findings even though a party has represented that it can adduce further evidence, if under the circumstances, the court determines that the evidence will have little or no probative value. *See id. EBC, Inc. v. Clark Bldg. Systems, Inc.* (3d Cir. 2010) 618 F.3d 253, 272.

In considering whether to enter judgment under Rule 52(c), the court applies the same standard of proof and weighs the evidence as it would at the conclusion of the trial. *See Emerson Elec. Co. v. Farmer,* 427 F.2d 1082, 1086 (5th Cir.1970); *Falter v. Veterans Admin.,* 632 F.Supp. 196, 200 (D.N.J.1986). Accordingly, the court does not view the evidence through a particular lens or draw inferences favorable to either party. *See Ritchie v. United States,* 451 F.3d 1019, 1023 (9th Cir.2006); *Giant Eagle, Inc. v. Fed. Ins. Co.,* 884 F.Supp. 979, 982 (W.D.Pa.1995). The court should also make determinations of witness credibility where appropriate. *See Parker v. Long Beach Mortgage Co.,* 534 F.Supp.2d 528, 535 (E.D.Pa.2008); *Falter,* 632 F.Supp. at 200. Finally, if the court enters judgment under Rule 52(c), it must make findings of fact and conclusions of law pursuant to Rule 52(a). *EBC, Inc. v. Clark Bldg. Systems, Inc.* (3d Cir. 2010) 618 F.3d 253, 272-73

<u>Evidence by Offer of Proof is sufficient</u>. In *Granite State Ins. Co. v. Smart Modular Technologies, Inc.* (9th Cir. 1996) 76 F.3d 1023, 1031, the court concluded that the offer of proof was an appropriate means for the court to receive and consider Granite's proffered evidence. The court was not required to receive live testimony. *See Stone v. Millstein,* 804 F.2d 1434, 1437-38 (9th Cir.1986) (interpreting prior Rule 41(b)).

For those reasons, judgment is to be entered against Twisselman under Rule 52(c) based on her offer of proof made during her opening statement at trial.

**CONCLUSION.**

Based on the foregoing, Twisselman's signing of the court's Official Forms, in blank, and in contemplation that they would be filled in by her attorney, constitutes a "knowing and fraudulent making of a false oath" in connection with her bankruptcy case. The misrepresentation of fact was material. Accordingly, Twisselman's discharge is denied pursuant to Bankruptcy Code sections 727(a)(4)(A).

Twisselman's conduct in (1) signing blank bankruptcy forms, (2) hiding the Chase bank account, and (3) undervaluing the Charles Schwab accounts, are exceptional circumstances where debtor engaged in inequitable conduct that, if left unchallenged, would deny "creditors access to property in excess of that which is properly exempted under the Bankruptcy Code" as described in *Latman*. For those reasons, Twisselman's exemptions in her IRA valued and exempted at $24,000.00 (which contained $24,869.36 on the trial date), and cash surrender value in a life insurance policy valued and exempted at $6,000.00 (which contained at least $6,853.90 on the trial date) are surchargeed to the extent necessary for the trustee to obtain $23,216.54 to replace the non-exempt funds that were in the Chase and Charles Schwab accounts on the petition date.

Twisselman is also required to surrender her 2007 Chevrolet Avalanche vehicle to Parker for liquidation. Twisselman is denied an exemption in the Avalanche, and her $3,525.00 vehicle exemption shall apply to her Honda Civic.

A separate judgment shall be entered herewith.

Dated: August 23, 2012

W. Richard Lee
United States Bankruptcy Judge

11